1085 Innovative Therapies v. Kinetic 1157 Discretionary Dismissal 1157 Discretionary Dismissal 1157 Discretionary Dismissal 1117 Discretionary Dismissal 1117 Discretionary Dismissal 1117 Discretionary Dismissal 1117 Discretionary Dismissal 1117 Discretionary Dismissal 1118 Discretionary Dismissal 1128 Discretionary Dismissal 1128 Discretionary Dismissal Discretionary Dismissal cannot be considered on the discretionary issue. I misunderstood your question, Your Honor. I thought you were focused on the position of these gentlemen and whether they could speak on behalf of the company. No, I'm talking about all the circumstances. But in terms of all the circumstances about these phone calls, while KCI's brief uses words like artifice, deception, and suction freeze. I don't care about their brief. I'm talking about the undisputed circumstances of the two telephone calls. Here's what's undisputed. Mr. Toomey identified himself. He identified that his new company was coming out with this particular type of product. A product that cited as a predicate device in its FDA submission to other products sold by competitors that were currently being accused of patent infringement by this very patentee. He didn't engage in any sort of deception, didn't misrepresent himself. And he told these gentlemen, I'm calling to see if we can peacefully coexist. Or, in other words, or alternatively to assess the risk of litigation here. And the answer that came back from Mr. Burke was neither reflexive nor obligatory. This was a gentleman who was on the 10-person executive committee and who it turns out, as we learned from documents produced after the magistrate judge's report, was in the loop. All that is true. I don't want to quibble with you about some of the facts versus all the other facts. Opposing counsel is going to stand up and give the other side of the story of these two phone calls. Now, it seems to me that Judge Robinson, who I earlier confused with Judge Arterton, is entitled to weigh all the circumstances based on the evidence before her. But I understood you moments ago to be saying, no, no, she cannot consider that on the discretionary decision. No, and as I said, if I conveyed that, I misspoke. I was addressing just the narrow issue of the apparent authority. If she was considering the circumstances of the two phone calls on the discretionary issue, then what is reversible in her discretionary call? Well, her opinion does not say that there was artifice or deception or subterfuge. But if that's what she meant, that's not supported by the record evidence. As I noted, Mr. Toomey was entirely truthful. He did not misrepresent himself. And these were not reflexive statements by lower-level employees who don't know anything about the way KCI enforces its patents. Mr. Burke was on the executive committee. He was very well aware of the way this company enforces patents. And there was nothing equivocal about his statement. He said, if you launch negative pressure wound therapy plus phone, the odds are 100 percent that KCI will sue you. There's no way it can coexist. Again, you're telling us a very one-sided story. He then added, if it infringes. Of course, if it doesn't infringe, we won't sue you. So, you know, if you only want to talk about the facts that are on one side of the scale, you're basically saying that Judge Robinson had to ignore all the facts that go against you and is only allowed to rely on the facts in your favor. Well, that's ridiculous. Of course, she has to look at all facts that point in both directions. I absolutely agree. But Mr. Burke did not add, if it infringes. That's what KCI asserts in his brief. But a closer inspection of the declarations does not support that whatsoever. Mr. Toomey's declaration and contemporary notes show that the statement was not contingent in that regard at all. And it was, if you launch negative pressure and phone, odds are 100 percent you will be sued. Steer clear of negative pressure and phone. Mr. Burke did not add the caveat, well, if it infringes. This is fully consistent. Well, I'll have to reread them both. My recollection of all three people's memorization of the two telephone calls is that both KCI people qualified what they said, that if it infringes. Mr. Gerard did. Mr. Burke did not. I would like to reserve some of my time for about, if there are no further questions, I'll yield the floor. All right. We'll hear from counsel for... Kinetic Concepts, Your Honor. Yep. May it please the Court, I'm Eric Puckneys, representing Kinetic Concepts. I want to start with your question, Judge Prost, about whether Judge Robinson actually dismissed under both grounds or just her discretion. What she did was she adopted the report and recommendation of Magistrate Judge Stark, which is almost entirely devoted to the constitutional issue. Right, but she didn't really, I mean, I don't want to... Where did she do that? Opening sentence. I think she distanced herself. The opening sentence? She says having reviewed. Yeah. She doesn't say I adopted, she says I read it. Your Honor, she does say adopted. Where? At A1. The report and recommendation is adopted and the case dismissed. It is ordered. Yeah, but the problem is that's somewhat inconsistent, and I'm not sure you all want to go there, given that she seems to acknowledge on page 4 that the standard applied by the magistrate judge was arguably, at least, inconsistent with metamu, and she even kind of references that. She said in footnote 4, in my view, the broad standard established by the Supreme Court should not be anchored in such a narrow paradigm. I understand, but I think what she was doing there, when you look at Judge Stark's report, he recognizes that the Sandisk Court said generally jurisdiction will not arise without an affirmative act, and then he goes on and says this is not the case that provides the exception to the general rule, and then he spends a lot of time on the affirmative act requirement, and I think what she's doing there, because their objection to the report and recommendation made it seem like Judge Stark was saying it's an absolute rule, it's a concrete, unwaverable rule, and what she's doing there is making it clear that that is not, that both she and Judge Stark recognize that it's a general rule, but that the exception is not this case. Well, going back to your initial point, I guess my precise question was, do you read her opinion as having decided no case in controversy in the alternative, even if there were, I'm exercising my discretion? That's exactly how we review it, and it makes sense if you consider Judge Stark's position as a magistrate judge, where he ends his report with a policy issue, but perhaps doesn't feel comfortable going into the realm of the district court judge on the discretionary aspect, so he lays out the law, he lays out the legal foundations for why it should be dismissed, provides a policy reason for why that's the right decision anyway, and then she takes it from there and says, okay, I agree with the magistrate judge on the law, now me as the district court judge, because this is my province, I'm going to now consider the discretionary aspect, and so that's why her opinion focuses more on the discretionary aspect, because that's her part of the equation. So how do you then reconcile her closing where she says, even if there's jurisdiction, and then qualifying what she says in the beginning, where she says, I adopt the magistrate's ruling? Well, because I think she's saying, look, even if there were jurisdiction in this situation, and I don't, but even if there were, I would exercise my discretion and dismiss the case that way. And I'd like to talk a little bit about the discretionary aspect of her decision, and starting with the Supreme Court's statement in Wilton, which is when we're looking at the district court's decision to dismiss in its discretion, that the district court should get, and the language here is unique and substantial discretion in the declaratory judgment context, especially for decisions and considerations of wise judicial administration. Now, Judge Robinson is the former chief judge of perhaps the most active patent court in the nation. There is no judge that understands the law. Yeah, but we don't rate judges. No, I understand, but from her standpoint, the wise judicial administration is at the forefront of her mind as a former chief judge, and she understands the burden that patent cases in particular put on judicial resources. But Mr. Puckney, she doesn't say a single word in her opinion about efficiency of the resolution of these issues in the one court versus the other. So you're asking us to write a new opinion for her based on what you think was in her mind that she didn't write down. Well, Magistrate Judge Stark at A20 talks about the policy reasons behind not adopting the rule that ITI wants in this case, and that is if there is no consequence to filing a premature declaratory judgment action, that you've taken away any incentive for potential declaratory judgment. Well, I'm trying to direct your attention to the lack of reasoning in her opinion regarding the exercise of discretion. Well, she states her- Why isn't this reversible for a lack of any analysis regarding discretionary dismissal? Well, because I think Judge Prost's comment at the beginning of my opponent's presentation, which was the irony of a party filing a declaratory judgment action and then moving to stay- Yeah, but that wasn't, I mean, I was dealing with all of the stuff that's happened since. That wasn't really, I mean, we're looking at what Judge Robinson thought, not my post hoc rationalization for why I think in hindsight she may have been right. Where is there any reasoning in her opinion about efficient use of either court's resources? Well, she doesn't talk about efficient, I agree with that. She says one thing as I read it, so tell me if you have any add-on. I think it comes down, her exercise of discretion comes down to one part of one sentence where she says, nevertheless, whereas here a DJ plaintiff was not willing to make its concerns a matter of record pre-suit. I am not convinced the objections of the DJ actor being served, blah, blah, blah. So I, having read these four pages over and over again, it seems to me that's the no. Do you agree of her analysis with respect to her exercise of discretion? Yes. So why is that sufficient? Well, it's sufficient because, and she cites Judge Bryson's concurrence in Sandisk here, which is the purpose of the Declaratory Judgment Act is to resolve disputes. But where one party refuses to even engage the patentee before filing suit, that is not going to help resolve disputes. Well, wait a minute. Their version is they did engage the patentee through these two phone calls. Well. So it has to be the logic of your argument that you've got to do it in writing or it doesn't count. That's not correct, Your Honor. The logic of our argument is you've got to make your concerns a matter of record with people who count, with people at the patentee who can actually make these decisions. And she makes a factual finding here that neither Burke nor Gerard are the right people to talk to at KCI, and there's indisputable support in the record. Well, in the sentence preceding the one I read, she starts off saying put the point differently, and she does say exactly that, that they were not in decision-making positions. That's correct. So you read those two together and say that her interpretation of why they didn't make their concerns a matter of record is because they were only dealing with non-decision-making people? That and also that Toomey was not direct in the purpose of his phone calls. And if you look at the context of the phone calls, she's absolutely right. There's no other way to read these facts. Toomey calls Burke on the eve of his retirement in Burke's car on his cell phone while Burke's on his way to Mexico. He calls him. The stated purpose of the phone call is to congratulate him on his retirement, and then he turns and asks for Burke's fatherly advice. He asks for his personal opinion. He's not asking for his, as an officer of KCI, I want to know what KCI's position is. He's asking for fatherly advice, and so Burke speaks, and he gives his 100 percent certain comment, but then even under Toomey's declaration, Toomey says, and then he clarified, and the language is, anything that scratches the surface of our patents, we'll go after. And so a layman's way of putting anything that infringes KCI, we'll go after, and that's the way Magistrate Judge interpreted that statement, and that is not a clearly erroneous interpretation by any extent. Shouldn't the district judge have to make something in the nature of Rule 52A, findings of fact, as to the factual circumstances that justify declining to exercise DJ jurisdiction when there is jurisdictional facts proven, but discretion is going to be exercised? I agree that there needs to be reasons given, but she adopted Magistrate Judge's report without qualification, without reservation, and Magistrate Judge's report is 20 pages long. It provides a detailed factual description of everything that went on and concludes with a policy reason for why ITI should not be allowed to benefit from its premature filing of this complaint in this case. And so you have to read the two together. If Judge Robinson's four-page opinion stood on its own, it would be a tougher opinion to defend, but she adopts that 20-page report, and that 20-page report is extraordinarily detailed and provides all the information this court needs to understand the situation below and what was going through the district court's mind. So in order to establish a case in controversy, you have to contact the patentee's legal department and make them explicitly aware of your product? No. That's a necessary requirement? We are not advocating a blanket rule here, but there needs to be a case or controversy between the parties, between the companies, and however that comes up, you can get jurisdictional, you can meet the jurisdictional requirements here. But in this case, if they're going to contact KCI, remember, KCI was generally aware of ITI but couldn't really find out any information about it. Well, they did have the information. They had some information. And they had the FDA. Yes, yes. They had 510Ks. Their marketing people were looking at it. Their legal people were not looking at it. Well, whose fault is that? I mean, you know, because that happened to be the case here, I mean, there's no general rule that it's only marketing and not legal. Oh, well, I agree, but the significance of it here is that, you know, what was going on internally at KCI is really irrelevant. What is relevant is whether there is a dispute between KCI and ITI in September 2007 when they filed the Declaratory Judgment Act. And there wasn't. There was no communication between the parties. There were no threatening acts from KCI towards ITI. You know, we're not asking for a blanket rule out of this case that covers all of them. What we're looking at is this court's jurisprudence in saying, when you look at what this court requires for a case or controversy, it's just not there in September 2007. What's missing specifically? What's missing specifically is any controversy between KCI and ITI. All they have are two personal opinions of people, friends of Toomey's, former colleagues of Toomey's. Well, they certainly are friends and former colleagues, but I don't quite understand how you can suggest that everything they said in these two phone conversations was purely on the personal side, not on the corporate side. Well, when Burke gives his description of how he thinks the decision makers at KCI would react, he's doing it in response to Toomey's request for fatherly advice. The conversation with Mr. Giroir. Calling it fatherly advice four times doesn't help me. The guy's on the management committee. He's a senior official of the company. He's asked about an infringement issue, and you're suggesting, well, his answer is purely personal. It's a personal conversation. It has nothing to do with the company. That just doesn't sound plausible to me. If it were not a purely personal conversation, if Mr. Burke understood this part of the conversation, this one or two minutes of the conversation, to be a corporate discussion matter, there's nothing in the record that suggests that either Burke or Giroir went to anyone else at KCI and said, oh, my gosh, I just got this phone call from a potential competitor. And when you think of the way Toomey described the product as essentially a knockoff of KCI's VAC, he doesn't go to anybody. Giroir doesn't go to anybody. They obviously felt, and the District Court found, that they thought they were having personal conversations. They thought that what was going on between them and Toomey was a confidential Where is that finding? There's the finding that it's a personal conversation. Where is that? It's in, well, Judge Robinson refers to it as they were not informed of the real purpose behind the conversations. And from that, I infer that she's talking about Wait a minute. You said there was a finding. Then either it would have to be by Robinson or by Stark. So I want to see a page number and a line number where the language of either fact finder makes a finding of fact. You're right. As far as a finding of fact, You've got to be a little bit careful. I understand. When you make an inference, you can't call it a fact finder's finding. You can say I infer from this and that piece of evidence. You shouldn't be saying the fact finder found. If I can explain my inference. All of the briefing below, all of the briefing before the magistrate judge and the district court judge were based on KCI's representation that these were personal phone calls and based on the declarations. And so she had an option here. I see I'm running out of time. You're not out of time until we tell you you're out of time. I understand. She has two, two factual, two interpretations of the facts in front of her. She has ITI's, which is these were professional phone calls between business people. And she has KCI's interpretation, which is Burke and Gerard thought these were personal telephone calls. And Burke and Gerard talk about the circumstances surrounding the phone calls. And so she resolves it, obviously, I think in KCI's favor here. And so that's why I infer. And I apologize for stating or suggesting that it was explicit. But looking at the record, it's clear that she interpreted the facts that way. Well, I think we've exhausted this conversation between the former colleagues. So let me turn to another point which troubles me, and that's the reference to the 510K. And I think you argue that other district courts may have concluded that that evidence is insufficient. But she didn't draw any conclusions about the insufficiency of that. That's correct. To put them on notice here. So isn't that a gap in her analysis with respect to either whether there's a case in controversy or alternatively whether or not she's going to exercise her discretion? It's not, Your Honor, because whether there is a case or controversy depends on the dealings between the parties. What's going on behind the scenes at KCI is frankly irrelevant. We had made the point that KCI hadn't even done an internal infringement analysis. But that was more for, you know, flavor. You know, not only had we not contacted ITI about possible infringement, we hadn't even done an infringement analysis internally either. And so whether or not the 510Ks were sufficient or whether or not there was an infringement analysis does not say anything about whether there was a case or controversy between KCI and ITI. So there's no gap in her not dealing with the 510Ks. Mr. Puckney, was anything done to move the North Carolina suit forward or was it stayed kind of in effect at day one? Your Honor, we have been trying to lift that stay and we fought the stay initially. That's not responsive. Was there any discovery? Were there any dispositive motions? Were there any progress in the case? Or is it just a complaint and an answer and then a dead standstill ever since? It's essentially a complaint and answer and a dead standstill. We've taken some discovery in the Delaware case and have been doing our best to try to move discovery forward in North Carolina, but we haven't been successful. Thank you very much, Your Honor. All right, Mr. Graves. Your Honor, may I have rebuttal time restored? Yes, we'll give you three minutes. Thank you, Your Honor. First, counsel's comment that one has to read the magistrate judge's report together with Judge Robinson's opinion to understand the basis for Judge Robinson's discretionary dismissal is, I think, quite telling here because the fact of the matter is Magistrate Judge Stark never addressed the issue of discretionary dismissal in his report, so that report cannot be used to fill the large gaps in the district court's opinion regarding a basis for discretionary dismissal, which is this one. Well, again, that goes back to your argument that certain facts can only bear on jurisdiction and cannot bear on discretion. It seems to me quite possible that the same set of facts could bear on both issues. I'm actually making a different point, Your Honor, which is the magistrate judge's report never finds that there's something improper regarding the pre-suit phone calls, never addresses discretionary dismissal. In fact, he says he's assuming all the facts as alleged by ITI to be true, so his report cannot be used to fill the gaps in Judge Robinson's discretionary dismissal analysis. That's the point. I guess I still don't understand. Why not? I don't see her analysis as being these guys were sneaky and I don't like what they did and therefore I'm at my discretion. I read as saying they contacted the wrong people and these people have no authority to do it, and so therefore they didn't come up, as she says, with, you know, they didn't contact not willing to make its concerns a matter of record pre-suit. So I don't think this was kind of we're reviewing whether or not she made this correct decision on the propriety or the niceties of who contacted her. I think it was purely made because these people didn't have the authority, and that's what your client placed his reliance on when he filed the DJ. But we had reliance on many other facts, objectively proven facts that are not disputed here, namely our 510Ks identified two devices. That one came in in the amended complaint, right? No. No? No, that's not correct. The amended complaint added facts about the post-filing inspection of a product by KCI under refusal to grant a covenant not to sue and then, of course, the subsequent action in North Carolina, among other facts. But at the time we filed the initial action, we pled that we had asserted the accused devices of Medela and Blue Sky as predicate devices. Those companies were already in litigation with this patentee. This patentee had sued each of the competitors who had come out with a negative pressure plus phone device. I guess it reveals abysmal ignorance, but it's not entirely clear to me what the legal force and effect is of the FDA phraseology predicate devices. What is that supposed to mean to us? It means that the applicant is certifying that its device has the same technological characteristics as the predicate device. Yeah, but that doesn't necessarily bear on infringement versus non-infringement. It may just bear on whether they're similar enough that since the earlier device was found to be safe and effective by FDA, that the later device would also be assumed to be safe and effective. So it's not clear to me that the phrase predicate device tells us anything about infringement versus non-infringement. It doesn't go to the conclusion of whether there's infringement or not, but here it's a factual circumstance that's very relevant to a case of controversy because ITI already knew that both of the other competitors that came out with this device had been sued for patent infringement and were embroiled in ongoing litigation with KCI. Well, you say this device, but it isn't this device. It's a predecessor device. Right, but actually counsel described Mr. Toomey's characterization during the phone calls of the ITI device as a knockoff of the VAC, which is a telling statement because all Mr. Toomey said was negative pressure plus foam. Well, that's what the predicate devices had, and the notion that KCI would sue any negative pressure device plus foam was fully supported by the existing litigations and by its internal documentation showing that it believed its patent estate barred the use of negative pressure plus foam. So those are relevant factual circumstances. Was there any live testimony here either before the magistrate judge or the district judge? No, there were just some depositions and the written declarations. Can I ask, I don't want to use up much of your time. You've got markings on, we've got confidential briefing in this case, and I guess what is the basis for it? It's not intuitively obvious to me why what you've marked confidential. I believe the only basis for any confidentiality designation is that the documents that KCI produced to us after the magistrate's report were internal KCI documents that they marked as confidential. So the documents showing that they discussed ITI and its 510K submission at competitive intelligence meetings and the documents reflecting their investigation of ITI were marked as confidential by the defendant. In a recent case, if I'm recalling correctly, a panel in an opinion by Judge Rader suggested that in circumstances such as this, the discretionary analysis may look almost exactly like the 1404 transfer analysis. Do you think that that case required Judge Robinson to make a transfer type analysis as opposed to the analysis represented by her actual opinion? Absolutely. In fact, KCI took that very position below, and we agreed that since what we were dealing here with was competing forum interests. Do you think it's error per se for her to not have explicitly written up a 1404 analysis? I believe so. The Micron decision says that whereas here you have competing forum interests, the district court must analyze the convening factors under 1404A, and that's particularly important, Judge Rader's opinion said, in the wake of MetaMeme, which lowered the bar for D.J. jurisdiction. Is must in the Micron opinion? Must and need are both in the opinion in connection with phraseology. What's the exact wording? Do you have that? Yes. I can pull that. Micron was a transfer case, right, because Judge Robinson recognized that her decision would have an effect. She actually put it in a footnote, but this wasn't a transfer case. Was transfer requested? There was an alternative request by KCI in its motion to dismiss for transfer to the second file. It's not decided in this opinion, is it? That issue is not decided here, and it should have been addressed as part of the discretionary dismissal analysis. Give me the exact language from Micron. The language that conveys the word or the notion must, mandatory. My question to you is, is it reversible error per se to fail to include a 1404 analysis? You said yes, it's reversible per se. I believe so under Micron because we do have competing fora here at issue. At page, this is 518F3rd at 904. Quote, therefore, the trial court weighing jurisdiction additionally must consider the real underlying dispute, the convenience and suitability of competing forms. In sum, the trial court must weigh the factors used in a transfer analysis as for any other transfer motion. Well, are you interpreting that quoted statement as setting up a requirement that a declaratory judgment action has to be converted into a transfer motion? And analyzed as if it were nothing but a transfer motion? No, I believe the court still needs to assess the existence of an actual case or controversy under all the circumstances. And then, if it's considering the issue of discretionary dismissal, and there is a subsequent filed action for patent infringement in another venue, then, under Micron, the court must engage in a convenience factors analysis of 1404A as part of that. Can you make that argument in your brief? Absolutely. Where is it? Starting page 37 of our opening brief, we note in the first paragraph that this court's precedent requires the district court to apply the convenience factors of a transfer analysis under 1404A, and then we go on to discuss the Micron case. And here, there's no question that was not done, despite both parties urging that it must be done. All right, I think we have the positions of both sides pretty well in hand. We have the two opinions and the underlying depositions and so forth, so we'll just have to sort it all out. We thank both counsel. We'll take the appeal under advisement. Thank you, Your Honor. All rise. The Honorable Court has adjourned until tomorrow morning at 10 a.m.